UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LATOYA PERRY,

        Plaintiff,

Case number 04-74481
Honorable Julian Abele Cook, Jr.

v.

KURT MCGEE, THE WACKENHUT
CORPORATION, a foreign corporation,
and THE CITY OF DETROIT

        Defendants.

_____/

ORDER

The Plaintiff, Latoya Perry ("Perry"), initiated this lawsuit in the Wayne County Circuit Court of Michigan against the Defendants,[1] the Wackenhut Corporation ("Wackenhut"), and the City of Detroit ("City"), alleging (1) a violation of 42 U.S.C. § 1983, (2) gross negligence, (3) premises liability, (4) negligence, (5) negligent supervision, and (6) a violation of the Michigan Elliot-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101, *et seq*[2]. This Complaint arises from improper

---

[1] Kurt McGee is a named Defendant in this lawsuit. However, there is no evidence that he has been served with process as of this date.

[2] At Perry's request, the Court voluntarily dismissed her claim in Count I of the Complaint (violation of 42 U.S.C. § 1983) against the City without prejudice. However, prior to rendering its decision on the narrow issue of whether to dismiss this allegation with or without prejudice, the Court heard and evaluated arguments by Perry and the City. Additionally and acting upon Perry's uncontested request, the Court authorized the voluntary dismissal of Counts II (gross negligence), Count III (premises liability), and Count IV (negligence) against the City, all with prejudice.

relationships between Perry and Kurt McGee ("McGee"), who was employed by Wackenhut as a security guard at the 36th District Court jail in Detroit, Michigan during all of the times that are relevant to this controversy. On May 22, 2006, the City filed a motion for the entry of a summary judgment, in which it asserted, among other things, that Perry's allegations were false and had not been substantiated by the documented evidence. Approximately two weeks later (June 8, 2006), Wackenhut filed its own motion, seeking to obtain the entry of a summary judgment on legal grounds that were essentially the same as those raised by the City in its May 22nd pleading.[3]

## I.

On March 16, 2004, Perry was arrested by the City of Detroit law enforcement authorities on an outstanding warrant. She was transferred to the 36th District Court Jail on the following day where she was placed alone in a holding cell while awaiting her arraignment. Perry contends that shortly after her arrival in the corrections facility, McGee tried to grope her breasts in a private corridor of the courtroom while she awaited the commencement of the arraignment proceeding.

Perry also asserts that McGee came into the holding cell quarters after the arraignment had been completed on several occasions, during which he brought extra food and juice, and ultimately asked her to "show him what she was working with." Perry construed this comment as a request to lift her shirt. She also contends that, even though this overture had been rebuffed, McGee continually made unsolicited sexual advances toward her, She proclaims that a persistent McGee exposed himself and urged her to engage in an act of oral sex. She refused and asked to speak with

---

[3]On June 29, 2006, Perry filed a motion in which she requested the Court to strike Wackenhut's motion for summary judgment, citing the untimeliness of its filing. On August 8, 2006, the Court granted her motion, after concluding that Wackenhut had failed to comply with its Scheduling Order without any reasonable justification for its tardiness.

his supervisor who, according to McGee, was unavailable to speak with her at the time. McGee then left Perry's holding cell area.[4]

McGee eventually returned to Perry's holding cell and placed her in a different cell without any reported incident. However, he eventually returned to Perry's new location and, once again, asked Perry to" reveal" herself to him. Ultimately, Perry lifted her shirt and exposed her breasts to McGee. McGee left the cell and, upon his return to Perry's cell, he repeated his overture for oral sex. She refused. Around the same time that McGee was making his request to Perry for sexual favors, an unidentified individual turned on a radio to a loud volume. According to Perry, she was directed by McGee to remove her underpants. Thereafter, the two of them engaged in sexual intercourse. There is no evidence that she screamed, struggled or gave any evidence of protest. McGee then left the cell without any further contact with her.

Perry, after being transferred to the Wayne County Jail, reported the incident to the officials at this facility. She acknowledged that McGee never promised her anything in exchange for sexual favors.[5] Ultimately, Perry underwent an examination at a hospital in Detroit, the results of which proved inconclusive of any rape or forcible sexual activity.

II.

The Supreme Court has opined that "[o]ne of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex*

---

[4]Her holding cell was to the right of, and plainly visible to, the security personnel in the guard center.

[5]The City asserts that Perry made repeated requests for bond assistance and phone calls in exchange for exposing herself to McGee. However, Perry maintains that she only requested information pertaining to her bond assistance and requested an opportunity to make telephone calls because she wanted to "brush [McGee] off."

3

*Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). At the same time, the language within Rule 56© provides that a motion for summary judgment should be granted only if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Here, the burden is on the movant to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, the Court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed. R. Civ. P. 56©; *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). It is not the role of the Court to weigh the facts. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). Rather, it is the duty of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Hence, the moving party can show that a genuine factual issue is lacking if it presents evidence which is sufficient to make the issue "so one-sided that [they] must prevail as a matter of law," *id.* at 252, or point to a failure by the non-moving party to present evidence "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Upon such a showing, the non-moving party must act affirmatively to avoid the entry of a summary judgment. Fed. R. Civ. P. 56(e). A mere scintilla of supporting evidence is insufficient. *See Anderson*, 477 U.S. at 252, *quoted in Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). Indeed,

"[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

### III.

Mich. Comp. Law § 37.2102(1) mandates that the citizens in this State be provided with the full and equal enjoyment of public accommodations, including the right to be free from acts of unlawful discrimination. In order to prevail in a sex discrimination claim, an aggrieved person must demonstrate that similarly situated individuals received disparate treatment because of their gender. *Radtke v. Everett,* 442 Mich. 368, 379 (1993). Sexual harassment is considered to be a subset of sex discrimination. *Chambers v. Trettco, Inc.,* 463 Mich. 297, 315 (2000).[6]

In this case, Perry contends that she was denied the full and equal enjoyment of the facilities of the jail because of her gender, citing Mich. Comp. Laws. § 37.2302(a). In addressing this incident, Perry maintains that McGee's sexual assault occurred in a hostile environment in which

---

[6] Mich. Comp. Laws. § 37.2103 provides that claims of "[d]iscrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:

(i) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.

(ii) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.

(iii) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment."

she was forced to engage in sexual intercourse against her will. In Perry's opinion, her claim of misconduct against McGee constitutes sexual harassment. Claims that fall under subsections (i) or (ii) of Mich. Comp. Laws. § 37.2103 are generally referred to as "quid pro quo" sexual harassment issues. *Champion v. Nationwide Security, Inc.*, 450 Mich. 702, 708 (1996). However, those allegations that are made on the basis of subsection (iii) are referred to as "hostile environment" sexual harassment claims. *Chambers,* 463 Mich. at 310.

In this lawsuit, Perry has elected to proceed only under the "hostile environment" sexual harassment theory. Thus, in order to establish a "hostile environment" sexual harassment claim, Perry - as the alleged victim - must prove the following elements by a preponderance of the evidence; namely, that (1) she is a member of a protected group; (2) she was subjected to an unwelcome communication or conduct because of her gender; (3) the unwelcome sexual conduct or communication was intended to, or did substantially, interfere with her working environment or use of public accommodations or services; and (4) the applicability of respondeat superiority liability. *Chambers,* 463 Mich. at 311.

Perry insists that she has fully satisfied all of the *Chambers* criteria, including the existence of an agency relationship between Wackenhut (McGee's employer) and the City. She further contends that the City, through the complicity with the other guards at the jail facility, knew or had good reason to know that McGee would sexually assault her. Perry also submits that some of the guards and inmates were aware that McGee had frequently visited and harassed her in the cell. Additionally, she attributes the coincidental increase in the volume of the music to the guards' knowledge of the unlawful activities that were taking place in her holding cell. Finally, Perry maintains that the City had a duty to insure that she was placed in an appropriate custodial situation

where she would not be sexually assaulted or harassed.

The City challenges Perry's contentions and conclusions by asserting that "unless an employer affected or controlled the terms, conditions, or privileges of his or her employment, a non-employee may not bring a claim under the [ Elliot-Larsen Civil Rights Act of Michigan]," citing *McClements v. Ford Motor Co.,* 473 Mich. 373, 385 (2005).  Moreover, the City submits that there must be some nexus between the employer and the non-employee in order to establish a viable claim of liability.  *Id.* at 386.  Pointing to the facts in this case, the City maintains that Perry has not produced and will be unable to proffer any credible evidence which would establish the existence of an employer-employee relationship with McGee.  Thus, the City argues that Perry should not be permitted to prevail on her claims.

In *McClements*, the Ford Motor Company hired AVI Food Systems to operate three cafeterias in one of its plants. McClements was employed by AVI, to whom she complained about a series of incidents that were thought by her to have been a series of unlawful acts of harassment by a Ford employee.  A law suit eventually followed, with claims being registered by McClements against Ford and AVI. Ultimately, the Michigan Supreme Court determined that Ford was not her employer, in that she had been hired, paid, and was only subject to discipline by AVI.  In reaching its decision, the court also concluded that she had failed to establish that Ford affected or controlled the terms, conditions, or privileges of her employment.

*McClements* is neither apposite nor instructive to this case. Although Wackenhut was directly responsible for hiring McGee, the City acknowledges that it provided the funding for the operations of the 36th District Court jail facilities in 2004, and is directly responsible for Perry's arrest, as well as her subsequent placement and retention in the holding cell where she claims to

have been assaulted. Thus, the City is circuitously involved in the selection of the security guards and other personnel, all of whom are directly responsible for the safety and general welfare of the incarcerated persons within its jail facilities. Therefore, it is incumbent upon the City and/or any entity with whom it contracts, to guarantee the safety and general welfare of all of the persons who are employees and involuntary residents of its jail facilities.

IV.

Although Perry was not an employee of the City, it is her position that she was unable to "enjoy" the full use of public accommodations without any justifiable fear of emotional or physical injury. In seeking to determine if Perry's reliance upon her right to have the full and equal enjoyment of public accommodations was justified under Michigan law, the Court looks to Mich. Comp. Laws § 37.2301[7] which succinctly provides that a correctional facility within the State of Michigan is not considered a public service or a public accommodation. The Court construes a "correctional facility" to include all inmates who are housed in a state or municipal facility.

Although the parties implicitly agree that the building structure, in which Perry was housed on the date of the incident, was a public facility, a correctional facility is neither a public accommodation nor a public service. Although there may be a lingering question as to whether

---

[7] Mich. Comp. Laws § 37.2301(b) reads as follows:

"Public service" means a public facility, department, agency, board, or commission, owned, operated, or managed by or on behalf of the state, a political subdivision, or an agency thereof or a tax exempt private agency established to provide service to the public, except that public service does not include a state or county correctional facility with respect to actions and decisions regarding an individual serving a sentence of imprisonment.

Perry was sexually assaulted, the Court concludes that Perry cannot bring a claim under this statute, in that the illicit conduct, about which she complains, was neither housed in a public accommodation nor denied a public service.

V.

For the reasons which have been stated above, the City's motion for summary judgment must be, and is, granted.

IT IS SO ORDERED.

Dated: November 7, 2006           s/ Julian Abele Cook, Jr.
    Detroit, Michigan          JULIAN ABELE COOK, JR.
                                      United States District Court Judge

Certificate of Service

I hereby certify that on November 7, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                               s/ Kay Alford
                                               Courtroom Deputy Clerk